appreciates your willingness to accept the appointment in this case under the Criminal Justice Act and you may proceed may it please the court counsel my name is Joshua Weir I am based out of Omaha Nebraska and I am here to represent the of the Southern District of Iowa and this was two trials that took place in front of the Honorable Chief Judge Stephanie M Rose in August of 2021 at about 3 30 in the morning in Council Bluffs Iowa the appellant mr. Ashmore and a passenger in his vehicle pulled into the countryside in in suites into the parking lot this area of Council Bluffs is a business district there are restaurants there are gas stations there's also a U-Haul business most of the businesses in this area which is located right off of interstate 80 would be open during normal business hours but several businesses such as the gas station and the countryside in and suites would be open at all hours as I stated at approximately 3 30 in the morning mr. Ashmore and his passenger pulled into the countryside in and suites and they parked in what is they backed into a parking spot the Jeep Patriot that was driven by mr. Ashmore did not have a traditional license plate it had a paper dealer plate on it you might assume that we've read the briefs and know the facts if you want to get to why you think there was error absolutely have eight minutes judge Rose in this found that there were six different facts this is essentially a totality of the circumstances case that's all we're talking about there's not really a dispute as to the facts it's pretty clear what we have is just the facts that judge Rose it does that amount to a reasonable articulable suspicion order for a Terry stop now judge Rose found essentially six facts the the remote location of the Jeep which was parked in the back of the hotel there was it wasn't near where they would have to check in but an individual could get on their phone they could dial up a room and then go in and check in and I would submit to the court that it's not unusual at all to park in the back of a hotel the night manager found it unusual in this case isn't that right he did find it unusual if there was reasonable suspicion from the employee how is it unreasonable that the judge found reasonable suspicion as well I mean it's not quite a fair question but you understand my point well it is yeah the hotel worker was like this is odd yes it he he found it odd and he testified that he was about to place a phone call to police officers to have them check on him he had not done so that information was not available to the police officer but just because a layperson calls an officer just to say hey can you check something out of my parking lot I don't think that that's a reasonable suspicion of criminal activity well they had a little more than that didn't they have like the they have the time of the day 3 in the morning they have an area that's been prone to crime that they they that the officer says he was aware of they have the paper tag which the officer believes has been associated with stolen automobiles in the past they've got the position of the occupants of the vehicle the driver appears to be sort of sloughed or slumped back it's hard to know exactly how to describe it but he's reclined in some degree and you've got the an area where they've had like the crime that's been identified in the area driving under the influence sex trafficking prostitution and drugs right and given the occupation of the the way the guy was leaning back there was isn't that enough to even a reasonable articulable suspicion is very low it's just like can you articulate a reasonable reason why you think there might be a crime of what well first of all with regard to the high crime area it's a hotel that's open through all hours of the night it's a business area yes he indicated there might be some prostitution or driving under the influence but this is not like a violent area this is an area where there's like drugs I'm not trying to apply it was what I'm really and I should probably not have described it as a high crime area as much as it was an area that the officer said either prone to be some some intoxicated people and they're prone to be some prostitution going on in this area yeah and judge rose put it the the frequency of calls to law enforcement it there are a number of calls to this area I don't think that those rise to our reasonable articulable suspicion but I think one thing that that is reading through this case one thing that was not brought up but it's in one of the cases it's from the huge Hughes case which is five one seven f-third and it said that the alternatives available to police also factor in the balance of how balance of interest however here the officer had to less invasion invasive options the officer could have observed the suspect for a considerable length of time watching other indications of incipient criminal criminality that would give him reasonable suspicion or come up for a consensual encounter I think you have to consider the other alternatives here and in this case the officer only observed them for mere moments he drove past them in his vehicle he saw the vehicle backed in with paper plates and then he immediately parked right in front of them when he attempted to exit his car they got out of their car and he ordered them into the vehicle put their hands up so he had only observed them for mere moments now if any of these were instances that needed to be investigated he could have just walked up to the car he could have looked at the the paper plates he could have an instigated a consensual encounter that the facts that he had available to him were very minimal he could have parked across the parking lot he could have seen what was going on with the vehicle and eliminated a lot of the possibilities in terms of there being a sex act there was no indication that there was a sex act going on that the female had said that she was sitting upright looking out the window and as you noted that the driver was slightly reclined or reclined it's not entirely it's hard to tell he wasn't slumped over he was leaning back yeah he was just leaning back in his vehicle so there was no and it was such a short encounter that the officer never observed any type of sex act between the two so it's just kind of one of those things hey I I see two people there 330 in the morning and it's unreasonable for the officer to see two people in a car parked in a dark spot behind the the hotel and just say just because there's a man and a woman that car it's likely prostitution is going on correct he could have gone to and spoken with the hotel clerk and said hey that there's a car out here how long have they been here what's going on here no he immediately parked his vehicle reversed block the vehicle in and the second that they attempted to leave he told them to put their hands up and they were seized at that moment so any of the things that if you look at the totality could have been eliminated with a little bit further investigation by either talking to them observing them a little bit further or speaking with the clerk each of these are very small the remote location of the jeep if I were to park in a hotel I typically would park in the back and then you go check in and then you walk out and you're right near the door so you can take your luggage in you back in because you're gonna take items out of the back of your vehicle the time of day 3 30 in the morning people check in it's not uncommon for people to check into a hotel at 3 30 in the morning it's open for that and if a person was going to get a hotel room on their phone it would take a few minutes and that the appellant and his passengers were only there a couple of minutes now we do acknowledge that there were some frequent law enforcement calls to that area but once again this is where the officer could have talked to the clerk and he could have just done some further observance to see if these two were engaging in any type of behavior that was suspicious all he saw was mere moments and then he decided to block them in if he'd have gotten out of his car he could have seen the paper plates and I know it's not information that was available to the officer like that of the testimony of the clerk but at trial the government brought in the car dealership where he purchased this car there's no illegality that was noticed here if he had taken two moments to do further investigation he didn't do that he blocked him in and he sees them and the stop in your opinion occurs when the cars blocked in initially I thought that but I think the no the judge did say that it was blocked in the Mayberry said it was not blocked in she said it was blocked in in her order at at the very end it says he did not violate the Fourth Amendment when he blocked the Jeep into its parking spot and directed Ashmore and the woman to remain in the vehicle I think the Mayberry case where it says as in Barry Mayberry's actions Belia finding that Mayberry did not feel free to leave the scene because precisely that's what he tried to do so if you're talking about what a reasonable person in Ashmore situation would have done when he attempted to exit the vehicle and he was told immediately that he couldn't that's when he was not free to leave that's when he was seized and anything from that point forward because there was not a reasonable articulable suspicion should be suppressed and I will reserve the remaining 20 seconds very well thank you for your argument Mr. Hanson we'll hear from you good morning may it please the court Kyle Hanson on behalf of the United States officer Meyer applied his training his experience and his common sense when he encountered defendant Ashmore parked behind a hotel in a crime prone area at 330 in the morning the totality of the facts available to him supplied reasonable suspicion so the district court correctly denied the motion to suppress and this court should affirm how long was the officer there observing the situation before the seizure occurred it was a very brief moment but it was enough to give him reasonable suspicion that criminal activity maybe what do you make of the argument by counsel that there were so many alternatives that were easily available to the officer here that could have determined in short order very short order that there was no illegal activity foot or it could have been a consensual encounter first off the Fourth Amendment does not require police to adopt the least restrictive alternative as long as the officer had reasonable suspicion at that moment a stop was justified but beyond that the officer in this case did attempt to do a consensual encounter he testified that he did not completely block in the car that if Mr. Ashmore wanted to drive away he could have what are the district court find on that so the district court did not directly address the question of whether he was seized at the moment the officer stopped the car at the very end of the order there is a reference to the car being blocked in however it's not the type of factual findings similar to how the court addressed the reason suspicion question beyond that the court did specifically find that officer Meyer testified credibly and officer Meyer was insistent at the suppression hearing and later at the trial that he did not completely block in the car that is only partially blocked in are you defending the ruling on that basis or are you saying there's reasonable suspicion so it doesn't matter whether whether the car was blocked in right I don't think that fact is determinative to the analysis it's really well it could be determined that's why I'm trying to understand your position if there was no seizure that would be determinative so there was a try to understand whether the government's position is there was no blocking and therefore no seizure so it's not there you're assuming for analysis that there was a seizure and saying there was reasonable suspicion go ahead sorry it's not that there wasn't a seizure it's just when was that seizure enacted so there's no question that once the officer tells them to get back in the car and close the door and put up their hands that that is a seizure so really the the only additional fact that comes into the analysis based on whether it's that moment or when he parked the car is the suspicious attempt to exit the vehicle now that's not I say it's not determinative because with or without that fact the record supports reasonable suspicion and I think the clearest path to criminality in this case is trespass and the record establishes that this hotel had issues with crime in its parking lot those issues that led the clerk just months earlier to request additional police presence and additional patrols through the parking lot officer Meyer knew about that and this was part of his routine patrol was to circle through hotel parking lots and it wasn't just a generalized hunch that crime happens in parking lots earlier in that same shift he had been summoned to four different calls at nearby hotels for suspicious people in the parking lot so this is a common problem in the area and particularly in this hotel parking lot and looking at what he saw what he observed even in that brief moment provided a reasonable suspicion that a trespass may be occurring the crime instances that had happened previous in the hotel parking lot had prompted the that the hotel parking lot was only for hotel guests that violators would be prosecuted and when officer Meyer pulled around to the back of the parking lot and observed Mr. Ashmore the facts available to him pointed to a reasonable conclusion that Mr. Ashmore was not a legitimate front door as possible and rather than rummaging around to collect his luggage or tapping on his phone to make a reservation or anything like that he was reclined in his front seat with his eyes closed so the best case scenario is he was sleeping in the parking lot without a hotel room and was not a hotel guest. The judge also made specific findings that there was some reason to believe that he may have been intoxicated and in actual physical control of a motor vehicle which I must assume is in violation of Iowa law and that given the nature location and the activities that have gone on in that general area before she did specifically say that Ashmore and the woman may be engaged in a sexual act or that he was under the influence so I mean it's not merely trespass basically she identified three separate bases that could be suspicious and three separate crimes that may be afoot. Absolutely your honor it's not just trespass all of those additional factors go into it and were articulated by the officer in this case so maybe a sex act, maybe intoxication the facts also supported the possibility of burglary. There had been calls to that area in the past. Break-ins at the U-Haul store that's just across the parking lot that was closed at 3.30 in the morning would lead a reasonable officer to investigate whether they were there to burglarize that business. On top of that the circumstances of how the vehicle was parked and only displaying a paper tag in the front would lead a reasonable officer to suspect that the vehicle could be stolen. He talked about how he had recovered stolen vehicles from hotel parking lots and he specifically explained that car thieves sometimes will put a dealer plate on the front, park with the back end in first so an officer driving through can't run a license plate to check if it's stolen, can't see if there's a temporary tag displayed in the back window. So again all of those factors supported a reasonable suspicion. I want to jump back briefly to the seizure question because there's a point that I did not come through as clearly in my brief as I preferred but for there to be a seizure it's not enough that the officer just made a show of authority, there also must be submission to authority by the suspect and the facts here don't show submission to the show of authority even assuming there was one by the officer parking near the Jeep. Instead what happened is Mr. Ashmore and his companion tried to leave. So they did not submit to authority until they were instructed to stay there. And it's not just that he tried to leave, it's the manner in which he tried to leave. So he appeared, you know, kind with his eyes closed that he could be even sleeping but the moment the officer's presence becomes known he jolts upward and he immediately tries to get out of the car at the same time as his companion. That would lead a reasonable officer to think that there was something in the car that they were trying to distance themselves from. Yeah, it's kind of a catch-22. We always tell people that they're free to leave and so then when they go to leave then we say that's suspicious, right? Isn't that the argument the government makes both ways? Except in this case it's not just that they tried to leave, it's that suspicious manner in which they tried to leave. So if he wanted to avoid the police contact he could have just stayed in the car and ignored the officer but the fact that he... You don't think the officer's coming over to talk to him either way? But he could roll up the window and just ignore it and go about his business and that's what the Mendenhall test would expect him to do. So for those reasons the United States respectfully requests that this court affirm the denial of the motion to suppress and affirm Mr. Ashmore's convictions. Thank you. Very well. Thank you for your argument. Mr. Weir, time for one sentence I think. Maybe two. Very briefly, Your Honor. That's one. I would just say that... My time didn't start on that. No, she's generous. Judge Rose did not make a finding that the appellant tried to exit the manor in any way that was suspicious. That was not part of her record shows that him slightly reclining backwards shows that he may have been intoxicated or engaging in a sex act. There was no additional information on those issues. Thank you. Thank you for those points. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Counsel are excused.